Entered on Docket July 8, 2021

**Below is a Memorandum Decision of the Court.**



**Brian D. Lynch**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

_

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

ROBERT GARVIN MOORE,

             Debtor.

Case No. 19-43563-BDL

ROBERT GARVIN MOORE and
TERESA JEAN MOORE**,**

             Plaintiffs,

    v.

LISA ARMENIO REIS; PAUL KIM REIS;
KELLER WILLIAMS PREMIER
PARTNERS; PAMELA MCANALLY;
JACQUELINE SMITH; SHELLY
SCHMITZ; DOES 1-50,

             Defendants.

Adversary No. 20-04017-BDL

**MEMORANDUM DECISION ON MOTIONS**
**FOR SUMMARY JUDGMENT**

## I. **Introduction**

During the Great Recession, when the consumer mortgage credit market seized up, home real estate values dove, and the overall economy for consumers suffered, a particular phenomenon developed. It involved individuals and entities offering to help homeowners with

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT       - 1

their mortgage lenders. In most such cases, little or no real help was provided, and the homeowners usually lost their homes to foreclosure.

The plaintiffs in this adversary are Teresa and Robert Moore. In March 2014, Ms. Moore styled herself as a "Loan Strategy Consultant." ECF No. 199-3. Lisa Armenio-Reis and her husband, Paul Reis (together, the "Reises"), had gone through difficult economic times, requiring them to move from their home in Battle Ground, Washington to Hawaii, where they had previously lived. The loan on their home in Battle Ground (the "Battle Ground Property") was underwater. The Reises attempted first to rent out the Battle Ground Property, then to short sell it. Both of those strategies failed, at which point the Reises were introduced to Ms. Moore, who offered to help them in obtaining a loan modification with their lender. Ms. Moore also convinced Ms. Armenio-Reis to allow the Moores' son Michael move into the Battle Ground Property rent-free.

The "help" provided by Ms. Moore only led to trouble for the Reises. Ms. Moore filed bankruptcy in the Northern District of California (Case No. 16-53510) and then in Hawaii (Case No. 17-01311), listing an interest in the Battle Ground Property along with various other properties in Nevada, California, and Hawaii, designed to frustrate and avoid paying mortgage lenders. Each of those bankruptcy cases—in addition to a prior case filed in Nevada (Case No. 14-13791)—was dismissed, with the trustees, creditors, and courts showing increasing degrees of frustration with Ms. Moore's behavior. In the Hawaii bankruptcy, Ms. Moore brought an adversary proceeding against the Reises and certain Keller Williams realtors, claiming an ownership interest in the Battle Ground Property and alleging stay violations. Haw. Bankr. Adv. Proc. No. 18-90033, ECF No. 4 at 1, 10–11. Ms. Moore also alleged several contractual claims against the Reises in the adversary under state law. *Id.* at 7–10. The Hawaii bankruptcy was ultimately dismissed with a bar to Ms. Moore refiling in any bankruptcy court for five years. ECF No. 188-1. The Hawaii Court's December 19, 2018 decision dismissing the case provides a

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT                - 2

catalog of the many prior bankruptcies filed by Ms. Moore, her husband Robert, and her parents. *Id.* at 2–4. At that time, Ms. Moore had filed nine bankruptcies during a twenty-five year period: "All told, she has spent about twelve of the last twenty-five years, and ten of the last fourteen years, under the protection of the bankruptcy court." *Id.* at 2. The Hawaii Court also dismissed the related adversary Ms. Moore had filed, but without prejudice. Haw. Bankr. Adv. Proc. No. 18-90033, ECF No. 12.

Flagstar Bank FSB ("Flagstar"), the mortgagee on the Battle Ground Property, which had not been paid in years nor agreed to a loan modification through Ms. Moore, proceeded with a nonjudicial foreclosure sale on July 5, 2019. ECF No. 175-1. The Moores had previously filed a lawsuit against Flagstar and its attorney, the then foreclosure trustee for the Battle Ground Property deed of trust, and the Reises in Clark County Superior Court on July 3, 2019, again claiming an interest in the Battle Ground Property. ECF No. 22-1 at 21–34. Before that case was resolved, Mr. Moore (Ms. Moore having been barred from refiling for five years by the Hawaii bankruptcy court) filed a chapter 13 case in this Court on November 5, 2019, again listing an interest in the Battle Ground Property and several other properties. Case No. 19-43563, ECF Nos. 1, 16.

When this Court learned of the Moores' history of bankruptcy filings and manipulations in those proceedings, it set an order to show cause hearing regarding whether the Court should dismiss the case and bar Mr. Moore from filing bankruptcy for several years. Case No. 19-43563, ECF No. 40. That hearing was set for March 31, 2020. *Id.* Shortly before an order was entered dismissing the case and barring Mr. Moore from filing bankruptcy for seven years, the Moores filed three adversaries in the Western Washington case, pro se: Adv. No. 20-04018, where they sued various parties involved in a pending foreclosure of a property in Studio City, California; Adv. No. 20-04020, where they sued various parties involved in foreclosure of the Hawaii properties the Moores claimed an interest in; and this adversary, where they sued the

**Below is a Memorandum Decision of the Court.**

Reises, Flagstar, its attorneys, Keller Williams Premier Partners ("Keller Williams"), and realtors at Keller Williams—Pamela McAnally, Jacqueline Smith, and Shelly Schmitz (together with Keller Williams, the "Keller Williams Defendants")[1]—who were involved in listing and marketing the Battle Ground Property for sale in 2018 for the Reises.[2]  The Court dismissed Adv. No. 20-04018 on the merits, and dismissed Adv. No. 20-04020 on the grounds that this Court was not a proper forum for adjudicating claims against the Hawaii defendants.

As to this adversary, the Court has dismissed all claims against Flagstar and its attorneys, ECF No. 183, and the stay violation claims against the Reises that allegedly arose from Mr. Moore's bankruptcy filing in the Western District of Washington, including for defending against the Moores in their Clark County Superior Court lawsuit, ECF No. 50.  The Keller Williams Defendants and the Reises (together, the "Moving Defendants") have separately filed motions for summary judgment on the remaining claims in this adversary.  ECF Nos. 187, 190.

II. **Factual Background of the Moores' Claims**

A. **The Reises Purchase the Property and Meet the Moores**

The Reises purchased the Battle Ground Property in 2004.  ECF No. 190 at 1.  On June 23, 2009, they refinanced a loan by executing a promissory note and a deed of trust in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), with Flagstar as trustee.  ECF No. 188-8.  Ms. Armenio-Reis lost her job in Washington and found a new one in Honolulu, where she was from, and the Reises moved back to Hawaii from the Battle Ground Property in 2011.  ECF No. 203 at 1; ECF No. 199-8 at 6.  The Reises began having trouble paying on the

---

[1] The Moores' Adversary Complaint included James Welch among the Keller Williams Defendants.  But Mr. Welch was dismissed from this adversary with prejudice by stipulation of all parties.  ECF Nos. 169, 171.

[2] The Moores also sued Jeffrey Merritt Wilson, who they associated with in connection with a property in California.  His only involvement with Mr. Moore's Washington bankruptcy was to file a proof of claim.  He also filed various pleadings in this adversary.  He was dismissed as a defendant early on in this adversary.  ECF No. 47.

promissory note after unsuccessfully attempting to rent out the Battle Ground Property, and they decided to either obtain a loan modification or sell the Property.  *Id.*  After the Reises first defaulted on the note on January 16, 2013, MERS assigned its interest under the deed of trust to Flagstar.  ECF No. 22-1 at 14.  The Reises had listed the Property for sale in 2013, but no sale materialized.  ECF No. 204 at 1–2.

In early 2014, Ms. Armenio-Reis was introduced to Ms. Moore, who said she could help the Reises obtain a loan modification to save the Battle Ground Property from foreclosure.  ECF No. 199-2.  The general idea was that the Moores would help the Reises use the Battle Ground Property to generate income via a "raw cannabis juicing" program.  *Id.*; ECF No. 199-7 at 2–3.  Ms. Armenio-Reis signed two separate authorizations permitting Ms. Moore to discuss the Battle Ground Property loan and to act as her agent in negotiations with Flagstar.  ECF No. 199-3 at 3; ECF No. 199-8 at 2–4.

Before Ms. Moore started work on the loan modification, Mr. Moore and the Moores' son, Michael, traveled to the Battle Ground Property in May 2014, purportedly to fix a variety of damage and issues that resulted from the Reises' absence.  ECF Nos. 199-5, 199-6.  No later than June 1, 2014, the Reises gave permission for Michael to live at the Battle Ground Property, under the impression that he would assist with restoring the Property and the juicing venture. ECF No. 199-6 at 8; ECF No. 199-4 ("My son will stay up there and get the property running for our programs.").  At various times since then, the Moores also claim to have spent time at the Battle Ground Property, although they have provided no written communication showing that the Reises gave them permission to reside there, as the Reises did for Michael.  On June 12, 2014, a broker who had heard from neighbors that there were people on the Battle Ground Property emailed Ms. Armenio-Reis.  ECF No. 62 at 15.  Ms. Armenio-Reis responded that there were renters and said:

> I'm not 100% clear on the final arrangement yet, but I do feel the house will be better off with people living there rather than abandoned. I'll have to keep you

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT                    - 5

posted as we finalize things. THe [sic] main renters [sic] name is Michael Moore he's the son of friends, Theresa [sic] and Robert Moore.

*Id.*

From 2014 into 2017, the Moores and the Reises made efforts to obtain a loan modification. ECF Nos. 199-8, 199-10. Ms. Moore enlisted a company called Core Advisory Group to assist in negotiations and dispute resolution with the Reises' lender. ECF No. 199-10. But the Reises were unable to obtain a loan modification. The Moores produce a January 10, 2017 email from a Core Advisory Group representative, Brandon Cordero, to Ms. Moore providing the following regarding the progress of a loan modification:

> My concern is that when I spoke to Ms. Reis, she clearly advised me that they really don't live [at the Battle Ground Property] and only go to the property when needed. She advised me that she doesn't want to make any address changes until the property has been approved for workout assistance. The hardship letter and letter of explanations we submitted in this recent submission was [sic] not sufficient. At this point I really need them to be in the property. The file has been flagged by the lender as non-owner and they are going to want to see bank statements and pay stubs to have the subject property.

ECF Nos. 199 at ¶ 21, 199-11.

On June 8, 2017, Ms. Moore emailed Ms. Armenio-Reis requesting that she sign an Assignment of Rights. ECF No. 62 at 41–43. Ms. Moore said in the email that she was willing to assign Ms. Armenio-Reis a fifty-percent interest in the Moores' property on Komo Mai Drive in Pearl City, Hawaii. *Id.* at 41. Ms. Moore also suggested that if Ms. Armenio-Reis assigned her interest in the Battle Ground Property, it would benefit the Reises by helping them prevent foreclosure of the Property, improving their credit and ability to get other loans or a refinance, and giving them the ability to claim a tax loss. *Id.* The attached Assignment of Rights would have assigned Ms. Moore all rights, title, and interest held by Ms. Armenio-Reis in the Property, and it makes no mention of an assignment or any other consideration flowing from Ms. Moore. *Id.* at 42. Ms. Armenio-Reis never signed the Assignment of Rights.

/ / /

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT          - 6

### B. Ms. Moore's Bankruptcies

Ms. Moore is no stranger to the bankruptcy process. By 2016, she had filed seven bankruptcies, and her parents had filed many others, sometimes involving the same properties. ECF No. 188-1 at 3–4. By 2016, Ms. Moore had most recently filed bankruptcy in the District of Nevada, which the court dismissed on November 20, 2015. *Id.* Ms. Moore then filed for bankruptcy in the Northern District of California on December 16, 2016, and that case was dismissed on December 1, 2017. ECF No. 188-2. In its finding that dismissal was warranted, the Northern California Court found that Ms. Moore's last-minute filings and requests to delay hearings "were simply part of a long pattern of delay that is prejudicial to creditors under [11 U.S.C.] § 1307(c)." *Id.* at 4. Before the Northern California case's dismissal, Ms. Moore had amended her schedules to include a fifty-percent ownership interest in the Battle Ground Property. N.D. Cal. Bankr. Case No. 16-53510, ECF No. 19 at 13. On the same day, she also amended the case's creditor matrix to include the Reises. N.D. Cal. Bankr. Case No. 16-53510, ECF No. 20 at 4.

Eighteen days after the California case's dismissal, on December 19, 2017, Ms. Moore filed for bankruptcy in the District of Hawaii, listing her residence in Hawaii at 2016 Komo Mai Drive, Pearl City (Haw. Bankr. Case No. 17-01311, ECF No. 3 at 2) and claiming a homestead exemption in property at 4251 Laurel Canyon Boulevard in Studio City, California (Haw. Bankr. Case No. 17-01311, ECF No. 16 at 15). As in her prior Northern California bankruptcy, Ms. Moore listed in her schedules a fifty-percent ownership interest in the Battle Ground Property, on top of interests in other properties located in Hawaii, California, and Nevada. Haw. Bankr. Case No. 17-01311, ECF Nos. 16 at 13, 113. From the outset, she also included the Reises in the case's creditor matrix. Haw. Bankr. Case No. 17-01311, ECF No. 3 at 13.

The Hawaii case was dismissed as a bad faith filing on December 19, 2018. ECF No. 188-1. Shortly before the case's dismissal, Ms. Moore filed an adversary proceeding against

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT          - 7

1  the Reises and certain individual Keller Williams agents, asserting similar stay violation and

2  contractual claims to those asserted in this adversary.  Hawaii Adv. Proc. No. 18-90033, ECF

3  No. 2.  After the dismissal of her bankruptcy case, the Court dismissed the adversary without

4  prejudice.  Hawaii Adv. Proc. No. 18-90033, ECF No. 12.  The Hawaii Court imposed a five-year

5  bar to refiling by Ms. Moore under any chapter in any bankruptcy court in the United States.  ECF

6  No. 188-1 at 14.

7  ### C.  The Reises Hire Keller Williams to Sell the Property

8  In March 2018, after several years without a loan modification and while Ms. Moore's

9  Hawaii bankruptcy was still pending, the Reises hired defendants Pamela McAnally and Keller

10  Williams to list the Battle Ground Property for sale.  ECF No. 189, ¶ 2.  On March 6, 2018, Ms.

11  Armenio-Reis told Ms. Moore that the Reises would be taking steps to sell the Battle Ground

12  Property without the Moores' involvement.  ECF No. 199-12 at 2–3.  In part, Ms. Armenio-Reis

13  said, "I will need to ask for a contact number to reach your son if he is still living in the house.

14  The realtor will need his cooperation to show the house when the time comes.  The realtor would

15  also like to stop by to see the interior condition of the house."  *Id.* at 3.  Ms. Moore responded

16  that she would "prefer to buy the house, in exchange for settlement of our agreement."  *Id.* at 2.

17  Ms. Armenio-Reis then said that she did not believe there was any fair exchange for any

18  agreement asserted by Ms. Moore.  *Id.*

19  On March 28, 2018, Ms. Moore again expressed an interest in purchasing the Battle

20  Ground Property and said Michael had seen a "for sale" sign in the yard.  *Id.* at 4.  She further

21  advised that she was in active bankruptcy and that there was a "bankruptcy stay in place from

22  anyone attempting to enter the property and or sale [sic] it."  *Id.*  Ms. Armenio-Reis responded

23  that she would sell the Battle Ground Property to the Moores if they could get the financing

24  together but referred Ms. Moore to Ms. McAnally of Keller Williams, the listing agent on the Battle

25  Ground Property.  *Id.*

In a March 28, 2018 email, Ms. McAnally attempted to get Michael's contact information from Ms. Moore to gain access to the Battle Ground Property. ECF No. 199-13 at 4. Ms. McAnally also said she would assist the Moores in purchasing the Property, saying that the Reises were free and clear to sell it. *Id.* In response, Ms. Moore asserted a "50% equity ownership interest and complete occupancy rights" in the Battle Ground Property, and she protested its listing for sale as a violation of the automatic stay in her pending Hawaii bankruptcy case. *Id.* at 3–4. When asked for documentation of her interest in the Battle Ground Property, Ms. Moore requested to speak with Ms. McAnally's attorney and her managing broker, defendant Shelly Schmitz. *Id.* The two exchanged additional emails into April 2018 in which Ms. Moore insisted on meeting with a managing broker and speaking with an attorney regarding the bankruptcy stay, while Ms. McAnally requested Ms. Moore provide documentation of her interest in the Property. *Id.* at 2.

On or around June 13, 2018, Ms. Armenio-Reis either posted at the Battle Ground Property or directed someone to post a Notice to Terminate Tenancy by June 23, 2018 and a Two Day Notice to Enter, stating that former defendant Mr. Welch and Ms. McAnally would enter the dwelling on June 14, 2018. ECF No. 199-14 at 5–7. Ms. Moore responded to the notices in a June 13, 2018 email to Ms. Armenio-Reis and Ms. McAnally by threatening legal action for stay violations, trespass, harassment, and vandalism. *Id.* at 2. She also insisted that she intended to purchase the Property through her chapter 13 plan in the Hawaii bankruptcy. *Id.* On or around June 21, 2018, the Moores mailed what they labeled a "Land Trespass Notice" to the Reises, Mr. Welch, and Ms. McAnally. ECF No. 199-15. The Notice stated that none of them could trespass on the Battle Ground Property. *Id.*

In July 2018, Ms. Moore emailed Ms. Armenio-Reis directly about purchasing the Battle Ground Property "without needing to bring an attorney in," attaching a loan preapproval letter issued to Michael. ECF No. 62 at 61–62. Ms. Moore requested from Ms. Armenio-Reis a loan

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT          - 9

payoff balance and "an agreement/assignment of your interest so we can get it closed before the Current Sale Date." *Id.* at 61. Ms. Armenio-Reis again referred Ms. Moore to Ms. McAnally. *Id.*

A letter dated September 8, 2018 from Ms. Armenio-Reis to Michael said that she would be stopping by the Battle Ground Property to view a vandalism issue on September 10, 2018, and there is some evidence suggesting that the Reises or other individuals came to the Property that day. ECF No. 199-17 at 2–4.

The Reises' listing agreement with Keller Williams lasted from March 1, 2018 to March 15, 2019, ECF No. 189 at ¶¶ 2–3, though there is no evidence of any activity by Keller Williams after the Moores issued the Land Trespass Notice. After March 15, 2019, the Keller Williams Defendants had no further involvement with the Battle Ground Property. *Id.* at ¶ 4.

### D. The Moores File a Lawsuit in Clark County, but Flagstar Forecloses on the Property

On February 26, 2019, the then trustee of the Battle Ground Property deed of trust issued a notice of trustee sale for July 5, 2019. ECF No. 22-2 at 10–15. On July 3, 2019, the Moores filed a complaint in the Clark County Superior Court against Flagstar, Joan Anderson (an agent of Flagstar), MERS, Northwest Trustee Services, Inc., North Star Trustee, LLC, and the Reises—all parties associated, in some form, with the deed of trust on the Battle Ground Property. ECF No. 22-1 at 21. The Moores' Clark County action challenged the validity of several instruments related to the Battle Ground Property deed of trust and sought to affirm the Moores' fifty-percent interest in the Property. *Id.* at 21–34. While the complaint requested, *inter alia*, "cancellation and expungement" of the February 26, 2019 notice of trustee sale, the Moores did not specifically request the scheduled trustee's sale be enjoined. *Id.*

On July 5, 2019, after many years of nonpayment, Flagstar acquired the Battle Ground Property through nonjudicial foreclosure. ECF No. 175-1. The Clark County case was ultimately dismissed with prejudice as to Flagstar, Ms. Anderson, and MERS on February 28, 2020. ECF

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT                  - 10

No. 22-2 at 50–51.  The resolution of the Clark County case as to the other defendants is not known to the Court.  In any event, its resolution as to the Reises is peripheral to the present motions.

### E.  Mr. Moore Files for Bankruptcy

Mr. Moore filed the bankruptcy from which this adversary stems in the Western District of Washington on November 5, 2019.  Case No. 19-43563, ECF No. 1.  The first iteration of his schedules did not include any mention of the Battle Ground Property.  Case No. 19-43563, ECF No. 16.  Mr. Moore first listed the Battle Ground Property in his schedules on December 30, 2019.  Case No. 19-43563, ECF No. 19.  Then, on February 18, 2020, Mr. Moore filed amended schedules that again did not list an interest in the Battle Ground Property.  Case No. 19-43563, ECF Nos 26, 47.  On February 24, 2020, Mr. Moore filed an amendment to Schedules A/B where he submitted an attachment listing an interest in various claims against third parties.  Case No. 19-43563, ECF No. 30.  Among them, he listed claims related to the Battle Ground Property for "Wrongful Foreclosure, conversion, DTA violation, FDCPA violation, stay violation" against the Reises, First Ohio Banc, Flagstar Bank, "et alia."  *Id.* at 2.

Throughout this adversary proceeding and in Ms. Moore's Hawaii bankruptcy, the Moores have asserted an ownership and a possessory interest in the Battle Ground Property.  They contend that the Reises transferred to them a fifty-percent ownership interest in the Property as part of an agreement, but they have never provided any written documentation in support of such an agreement.  *E.g.*, ECF No. 1, ¶¶ 63, 64 (stating that they obtained a fifty-percent ownership interest by June 1, 2014, as well as a possessory interest); ECF No. 1, ¶ 101 ("On March 6, 2014, the [Reises] entered into an oral contract with the Plaintiff Teresa for the sale and purchase of a fifty-percent interest in the [Battle Ground Property], which had a reasonable value of $280,000 at the time."); ECF No. 199-16 (a letter from Ms. Moore to the Hawaii bankruptcy trustee, describing a "4-year equity share property relationship" with the Reises).

**Below is a Memorandum Decision of the Court.**

The Reises deny that they ever agreed to transfer an ownership interest in the Battle Ground Property to the Moores. They state that Ms. Moore repeatedly requested that they add her to the title on the Battle Ground Property to help her negotiate a loan modification with their lender, but they refused. They also assert and produce a June 8, 2017 email showing that Ms. Moore offered an equity swap whereby the Reises would receive a fifty-percent interest in a property on Komo Mai Drive in Pearl City, Hawaii, and the Moores would receive Ms. Armenio-Reis's interest in the Battle Ground Property. But the Reises say they turned down the equity swap offer and believe that the Moores had no ownership interest in the Pearl City, Hawaii property to give. The Moores have never responded to this allegation.

### F. The Moores' Remaining Adversary Claims Against the Keller Williams Defendants and the Reises

The Moores' remaining allegations against the Keller Williams Defendants and the Reises derive from the first adversary complaint filed by the Moores. ECF No. 1. In July 2020, without leave of the Court and more than 21 days after a motion to dismiss was filed under Federal Rule of Civil Procedure ("FRCP") 12(b), the Moores attempted to assert several new claims against the Moving Defendants in their Second Amended Complaint. ECF No. 56. But the Court struck all unauthorized amendments (*see* FRCP 15(a)(1), incorporated by Federal Rule of Bankruptcy Procedure ("FRBP") 7015), effectively reverting the Moores' claims against the Moving Defendants to those in their first adversary complaint. ECF No. 85 ("The only remaining claims at this time in this adversary are those not herein dismissed or dismissed by the Court's order at ECF No. 49, and those remaining claims exist as they were set out in Plaintiffs' first adversary complaint (ECF No. 1).").

The Moores' only claim against the Keller Williams Defendants, which is also brought against the Reises, is labeled Count 1 of the First Cause of Action. The Moores allege that the Moving Defendants violated the stay in place during Ms. Moore's 2017 Hawaii bankruptcy case by: (1) listing the Battle Ground Property for sale; (2) accepting an offer to buy the Property; (3)

1   entering the Property to commit acts of vandalism; (4) entering the Property to post various

2   notices; and (5) continuing efforts to sell the Property without bankruptcy court approval.  ECF

3   No. 1, ¶¶ 65–71.  Paragraph 68 of the Complaint cites to 11 U.S.C. §§ 362(a)(3) ("to obtain

4   possession of property of the estate or of property from the estate or to exercise control over

5   property of the estate") and (a)(6) ("to recover a claim against the debtor that arose before the

6   commencement of the case").  The stay violation claim under 11 U.S.C. § 362(a)(6) cannot

7   survive.  As noted in the Court's prior ruling on Flagstar's Motion for Summary Judgment, the

8   Moores were not the borrowers related to the Battle Ground Property note and deed of trust, so

9   there was no claim against them that arose prepetition, much less one in favor of the Reises or

10   the Keller Williams Defendants.  Only the claim under 11 U.S.C. § 362(a)(3) has any plausible

11   applicability to the allegations raised by the Moores against the Moving Defendants.

12       In addition to the stay violation claim based on actions to sell the Battle Ground Property

13   during Ms. Moore's Hawaii bankruptcy, the other remaining causes of action are only against

14   the Reises: the Second Cause of Action (Breach of Contract); Third Cause of Action (Breach of

15   Implied Covenants); and Fourth Cause of Action (Promissory Estoppel and Unjust Enrichment).

16   **G.  Summary Judgment Motions and the June 2, 2021 Hearing**

17       On April 30, 2021, the Keller Williams Defendants filed their motion for summary judgment

18   and supporting documents.  ECF Nos. 187–189.  On the same day, the Reises filed their motion

19   for summary judgment.  ECF No. 190.  After requesting a continuance that was granted in part

20   and denied in part,[3] the Moores filed a response addressing both motions for summary judgment

21   _____

22   [3] Throughout the history of this adversary, Mr. Moore's bankruptcy case, and Ms. Moore's prior bankruptcy cases, a common theme has been the alleged medical problems of the Moores and their alleged need to delay

23   proceedings.  Ms. Moore, in particular, has alleged numerous medical conditions that would prevent her from responding or appearing on telephonic hearings.  Those conditions and requests are never supported by anything

24   other than the Moores' unsubstantiated statements.  And notwithstanding the alleged conditions, both of the Moores have appeared and argued at every hearing, in spite of the alleged medical conditions.  At a May 20, 2021 hearing

25   on the Moores' most recent request for a continuance, the Court noted at least eight instances since early 2020 where the Moores requested a continuance based on an alleged medical condition but later appeared and argued the matter anyway.  The Moores were fully aware of the deadline for responding to these summary judgment

on May 25, 2021 with supporting declarations. ECF Nos. 197–199. The Keller Williams Defendants filed a reply and supporting declaration, ECF Nos. 200, 201, and the Reises filed an untimely reply and two supporting declarations, ECF Nos. 202–204.

On the morning of the June 2, 2021 summary judgment hearing, the Moores filed an *ex parte* motion and declaration, again requesting that the summary judgment hearing be continued. The Court held the hearing nevertheless, and the Moores failed to appear. The Court ruled not to continue the summary judgment hearing, finding that the Moores' request lacked credibility and timeliness. The Court made further rulings on the record regarding the evidentiary and discovery issues raised by the Moores and their request to continue or outright deny summary judgment under FRCP 56(d). The Court now reaches the substance of the two summary judgment motions.

### III. Conclusions of Law

#### A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Venue is proper in this District. 28 U.S.C. § 1409(a). The portion of this matter involving allegations that the automatic stay was violated is a core proceeding, arising under 11 U.S.C. § 362(k). *Johnston Env't. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 617 (9th Cir. 1993). The remaining state law claims against the Reises are sufficiently related to the stay violation claims as to provide this Court with supplemental jurisdiction over them. *Davis v. C.G. Courington (In re Davis)*, 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995). In *Davis,* the Ninth Circuit BAP held that a bankruptcy court retained

---

motions and the pending trial date. A few days after the summary judgment motions were filed, Mr. Moore claims to have seen a Los Angeles eye doctor for a developing eye condition. The Moores then flew to Hawaii to see another doctor on a military base there about the eye condition. The Moores chose not to inform any defendant or the Court about this condition until May 17, 2021. ECF No. 191. The Court viewed this as another concocted medical emergency and further manipulation of these proceedings, and the Moving Defendants opposed a continuance. Even so, in the interest of giving the Moores ample opportunity to respond to the summary judgment motions, the Court continued the hearing and gave the Moores an extra five days to file a response, which they took ample advantage of. *See* ECF Nos. 197–199.

subject matter jurisdiction over a stay violation adversary after the underlying bankruptcy was dismissed, and that the court retained supplemental jurisdiction over state law claims because there was a common nucleus of operative facts sufficiently related to the federal stay violation claim. *Id.* at 912. The Moores' claim that the Reises violated the automatic stay in marketing the Battle Ground Property and posting notices depends on the Moores' claim that they had an ownership or possessory interest in the Property.

The Keller Williams Defendants and the Moores have consented to final adjudication of matters in this adversary proceeding by the Bankruptcy Court. ECF Nos. 137, 139. The Reises have made no explicit statements as to whether they do or do not consent to entry of final orders or judgments by the Bankruptcy Court. Under Local Rule of Bankruptcy Procedure 7012-1(c), the Reises' silence constitutes their consent to final adjudication by this Court. This decision is accordingly a final determination of all claims at issue.

## B. Summary Judgment Standard

Under FRCP 56(a), applicable to this adversary proceeding by FRBP 7056, summary judgment is appropriate where the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if it may affect the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, all justifiable inferences are drawn in favor of the nonmovant. *Id.* at 255. Even so, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Fiedler v. United States*, No. C06-5708 RBL, 2008 WL 80236 (W.D. Wash. Jan. 7, 2008) (citing *Anderson*, 477 U.S. at 252). If the movant establishes that there is no genuine issue of fact, the nonmovant then holds the burden of producing specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; FRCP 56(e). Summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that

1  party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v.*
2  *Catrett*, 477 U.S. 317, 322 (1986).

3  ### C.  The Moores' Hawaii Bankruptcy Stay Violation Claims

4  The arguments made in the Keller Williams Defendants' Motion for Summary Judgment
5  are largely applicable in defending against the Moores' stay violation claims against both them
6  and the Reises.  The only potential difference factually is that the Reises sent or posted two
7  notices dated June 13, 2018 to the Moores—a Notice to Terminate Tenancy and a Two Day
8  Notice to Enter.  ECF No. 199-14 at 5–7.  But the Notice to Enter stated that Keller Williams
9  agents James Welch and Pamela McAnally would be among those entering the Property on Ms.
10  Armenio-Reis's behalf, so even the posting of the notices arguably involved the Keller Williams
11  Defendants.  At the direction of the Reises, the Keller Williams Defendants also took steps to
12  market and sell the Battle Ground Property from March 1, 2018 to March 15, 2019.  Because
13  the stay violation claims against the Moving Defendants are essentially the same, the Keller
14  Williams Defendants' arguments benefit the Reises.  Each argument is addressed, in turn.

15  1.  <u>Prudential Standing</u>

16  The Keller Williams Defendants first argue that Ms. Moore has no prudential standing to
17  pursue stay violation claims from her prior Hawaii bankruptcy in an adversary filed in Mr. Moore's
18  Washington bankruptcy.  The Keller Williams Defendants point to the portion of the requirement
19  of prudential standing demanding that a "plaintiff's grievance arguably falls within the zone of
20  interests protected by the statutory provision invoked in the suit."  *St. Paul Fire & Marine Ins. Co.*
21  *v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).  The statutory provision at issue here is 11 U.S.C.
22  § 362(k), which the Moores invoke to seek damages and other relief for alleged stay violations
23  that could have only occurred during the pendency of Ms. Moore's Hawaii bankruptcy.

24  The Keller Williams Defendants cite several cases finding that a non-debtor spouse is not
25  necessarily within the class of persons intended to benefit from the automatic stay, including

*Rushing v. Green Tree Servicing, LLC (In re Rushing)*, 443 B.R. 85 (E.D. Tex. 2010) and *Siskin v. Complete Aircraft Servs., Inc. (In re Siskin)*, 231 B.R. 514 (E.D.N.Y. 1999). However, in each of those cases, the question was whether the protections afforded under 11 U.S.C. § 362 created an identity of interest between the debtor and the non-debtor spouse where that non-debtor spouse had not filed bankruptcy at any point. Here, Ms. Moore makes claims under 11 U.S.C. § 362(k) for alleged violations that occurred during her Hawaii bankruptcy.

The Court concludes that Ms. Moore has prudential standing to seek relief under 11 U.S.C. § 362(k). The automatic stay at issue was in place during her prior bankruptcy, and any stay violation against Ms. Moore would therefore fall within the zone of interests protected by the statute.

The other half of the prudential standing issue is whether Mr. Moore may assert a damages claim arising from the alleged violations of the stay in Ms. Moore's Hawaii bankruptcy. The cases discussing the issue are somewhat inconsistent. *Compare In re Rushing*, 443 B.R. at 99–101 *with In re Ward*, 837 F.2d 124, 125–26 (3d Cir. 1988). First, to the extent the Moores had an interest in the Battle Ground Property, it would have presumptively been community property. RCW § 26.16.030. Accordingly, the Moores' entire interest in the Battle Ground Property would have entered the Hawaii bankruptcy estate under 11 U.S.C. § 541(a)(2). The Court concludes that both of the Moores have prudential standing to assert stay violation claims that arose from Ms. Moore's prior bankruptcy because: (1) the alleged stay violation occurred against community property that was part of Ms. Moore's bankruptcy; and (2) the Moores' claimed ownership interests were within the zone of interests protected by the automatic stay.

Although prudential standing does not bar the Moores' stay violation claims, the Keller Williams Defendants raise a separate issue. Can a debtor from a dismissed bankruptcy case assert a stay violation claim in her husband's subsequent case in a different district where she is a non-debtor?

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT           - 17

Ms. Moore plainly could have asserted her stay violation claims in the Hawaii bankruptcy court, even after the lead case's dismissal.  Courts have said that 11 U.S.C. § 362(k) actions "are separate and apart from any related bankruptcy cases, and thus stand on their own." *Healthcare Real Est. Partners, LLC v. Summit Healthcare Reit, Inc. (In re Healthcare Real Est. Partners, LLC)*, 941 F.3d 64 (3rd Cir. 2019).  A stay violation claim may be heard separately from the underlying bankruptcy case, even after a bankruptcy case is closed or dismissed, and the underlying case need not be reopened.  *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181, 192–93 (Bankr. C.D. Cal. 2011).

The Ninth Circuit has held that a debtor can bring a stay violation claim from one case in a subsequent bankruptcy case, even if the subsequent case is in a different district from the prior one.  *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir.1992).  In *Schwartz*, the debtors (a married couple), along with a business they owned, filed a chapter 11 bankruptcy in Montana on February 25, 1983.  *Id.* at 570.  While the chapter 11 case was pending, the IRS violated the automatic stay, and the case was later dismissed without the debtors having challenged the stay violation.  *Id.*  Later, the debtors jointly filed a chapter 13 bankruptcy on October 8, 1987 in the Western District of Washington, from which the *Schwartz* opinion stems. *Id.*  The main question addressed therein was whether the IRS's stay violation was void or voidable, with the Ninth Circuit finding that it was void.  *Id.* at 570–71, 575.  But the Ninth Circuit BAP decision that was appealed and reversed had held that the IRS's stay violation was voidable, and said, "Because the debtor's [sic] did not challenge the assessment in the original bankruptcy proceeding, they are precluded from doing so now."  *United States v. Schwartz (In re Schwartz)*, 119 B.R. 207, 212 (B.A.P. 9th Cir. 1990).  The Ninth Circuit then rejected the holding that the debtors were precluded from challenging the stay violation after failing to do so in the case and district from which the stay violation derived.

The present situation is somewhat different from that in *Schwartz*, in that Ms. Moore seeks to recover damages arising from an alleged stay violation, while the *Schwartz* debtors sought to void a prior transaction. Nevertheless, the Ninth Circuit's decision supports the proposition that debtors may assert stay violation claims in a subsequent bankruptcy case, even if in a different district.

The stay violation claims exist independently from Ms. Moore's prior Hawaii bankruptcy, and they relate to community property that was included as part of Mr. Moore's bankruptcy filed with this Court. The Court concludes that the Moores are not precluded from making a stay violation claim arising from Ms. Moore's Hawaii bankruptcy in this adversary.

2. Judicial Estoppel

The Keller Williams Defendants argue that the Moores are judicially estopped from bringing a claim related to the Battle Ground Property against them because Mr. Moore failed to disclose those specific claims in his Washington bankruptcy schedules. As noted, the first time Mr. Moore's schedules included anything about claims related to the Battle Ground Property was with an amendment filed on February 24, 2020. Case No. 19-43563, ECF No. 30. But that amendment did not explicitly connect those claims to the Keller Williams Defendants, instead listing other parties, including the Reises. Accordingly, the Keller Williams Defendants argue that the Moores should be judicially estopped from bringing any of the claims against Keller Williams Defendants.

Judicial estoppel, "distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988). A party cannot obtain relief on a representation or position and then later seek relief on a contrary or opposite basis. *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 572 (1st Cir. 1993). "[A] debtor who fails to properly schedule a legal claim may be barred from asserting that

claim after the close of the bankruptcy case. . . . A debtor generally satisfies the duty if he or she puts the trustee on inquiry notice—that is, the trustee has enough information to determine whether to investigate further."  *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 350 (S.D.N.Y. 2017) (cleaned up).

The Court concludes that Mr. Moore's failure to specifically include the Keller Williams Defendants when listing the Battle Ground Property claims does not demand that the Moores be judicially estopped from asserting the claims now.  The disclosure of claims related to the Battle Ground Property would give a trustee enough information to determine whether to investigate further.  And it is not as though the Moores obtained any sort of relief by not identifying the Keller Williams Defendants before and now stand to obtain additional relief by taking a contrary position.   Nor do the Keller Williams Defendants articulate any prejudice they experienced from Mr. Moore's omission.

3.  The Effect of 11 U.S.C. § 362(c)(3)(A)

The Moving Defendants argue that the Hawaii stay was not in effect by the time they took any action relating to the Battle Ground Property under 11 U.S.C. § 362(c)(3)(A).  Where an individual debtor has had a single or joint case pending within the preceding one-year period that was dismissed, the automatic stay "with respect to any action taken with respect to a debt or property securing such debt . . . shall terminate with respect to the debtor on the 30th day after the filing of the later case."  11 U.S.C. § 362(c)(3)(A).  "For one-time repeat filers, the automatic stay terminates on the 30th day post-petition unless a party in interest files a motion to extend automatic stay that is noticed and heard by the Court before the expiration of the 30–day period."  *In re Tubman*, 364 B.R. 574, 579 (Bankr. D. Md. 2007).

Ms. Moore's California bankruptcy was dismissed on December 1, 2017, and she filed her Hawaii bankruptcy 18 days later on December 19, 2017.  ECF Nos. 188-2, 188-1.  Ms. Moore did not timely request that the stay be extended beyond its 30-day expiration.  *See* Haw. Bankr.

**Below is a Memorandum Decision of the Court.**

Case No. 17-01311.  Therefore, under 11 U.S.C. § 362(c)(3)(A), the stay in Ms. Moore's Hawaii bankruptcy terminated on January 18, 2018.  The Moving Defendants only began taking actions to sell the Battle Ground Property and terminate the Moores' possessory interests in March 2018.

The Keller Williams Defendants call for the Court to adopt the Ninth Circuit BAP's approach in *Reswick v. Reswick (In re Reswick)*, 446 B.R. 362, 373 (B.A.P. 9th Cir 2011) (holding that the stay terminates under 11 U.S.C. § 362(c)(3)(A) in its entirety, including as to property of the estate).  But courts since *Reswick* have tended toward the alternative approach, whereby the stay only terminates under 11 U.S.C. § 362(c)(3)(A) as to the debtor and property of the debtor, not as to property of the estate.  *See, e.g.*, *In re Rinard*, 451 B.R. 12 (Bankr. C.D. Cal. 2011).  This Court adopts the approach taken in *Rinard*.

Notwithstanding, the Moores' stay violation claim is not on behalf of an estate—be it the estate from Ms. Moores' Hawaii bankruptcy or the estate from Mr. Moore's Western Washington bankruptcy.  They seek damages for themselves based on their alleged interests in the Battle Ground Property.  They assert no damages or other relief on behalf of the Hawaii estate.

The Court has found no instances where a debtor has been permitted to recover damages for a stay violation against estate property after 11 U.S.C. § 362(c)(3)(A) has operated to terminate the stay as to the debtor and property of the debtor.  *Rinard*, for example, involved both the debtor and the trustee jointly seeking a temporary restraining order or preliminary injunction to stop acts allegedly in violation of a stay still in place over property of the estate.  451 B.R. at 13–14.  There are cases where debtors alone, without joinder of a trustee, sought to impose the automatic stay as to property of the estate.  *See, e.g.*, *Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813 (B.A.P. 10th Cir. 2008); *In re Williams*, 346 B.R. 361 (Bankr. E.D. Penn. 2006).  But those cases involved ongoing bankruptcies with active estates, and none of the debtors were solely seeking damages for retrospective stay violations like the Moores.

The Hawaii bankruptcy estate dissolved when Ms. Moore's Hawaii case was dismissed. Nothing adverse to the Hawaii bankruptcy estate occurred during the existence of the stay as a result of the acts of the Moving Defendants, and the Moores are not seeking damages on behalf of the Hawaii bankruptcy estate. Their remaining stay violation claims against the Moving Defendants can be dismissed under 11 U.S.C. § 362(c)(3)(A) for that reason.

    4.  <u>The Battle Ground Property and the Hawaii Bankruptcy Estate</u>

The Moving Defendants also argue that the Moores did not have an interest in the Battle Ground Property during Ms. Moore's Hawaii bankruptcy, and therefore their acts in trying to take possession of and sell the Property could not be violations of the stay.

The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The nature and extent of a debtor's interests in property must be determined by nonbankruptcy law. *Butner v. U.S.*, 440 U.S. 48, 54–55 (1979).

The Keller Williams Defendants raise two arguments why the Battle Ground Property was not part of Ms. Moore's Hawaii bankruptcy estate. First, they argue that the Moores cannot show any cognizable ownership interest in the Battle Ground Property as a matter of law because they cannot produce a written deed showing a conveyance from the Reises. Second, they argue that the Moores cannot show a valid possessory interest in the Battle Ground Property as a matter of law.

    *a.  The Moores cannot demonstrate an ownership interest in the Battle Ground Property as a matter of law.*

The Moores have asserted a fifty-percent ownership interest in the Battle Ground Property that they claim was granted by the Reises as part of an oral agreement. Presuming this oral agreement existed for purposes of summary judgment, can an oral agreement to convey an interest in real property create a legal or equitable interest in the property under 11 U.S.C. § 541(a)(1)?

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT    - 22

**Below is a Memorandum Decision of the Court.**

Under Washington's real estate statute of frauds, "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed."  RCW § 64.04.010.  And "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."  RCW § 64.04.020.

In addition to actual conveyances of real property, Washington courts have held that agreements to sell real property at a later date, like an earnest money agreement, also must be in writing and must contain a correct legal description of the property to be conveyed.  Otherwise, such agreements violate the statute of frauds as an encumbrance upon real estate.  *Martin v. Siegel*, 35 Wash. 2d 223 (1949).  If an agreement actually conveys title or interest in real property, or if it creates or evidences an encumbrance of real property, RCW § 64.04.010 applies, such that a written deed is required.  *Firth v. Lu*, 146 Wash. 2d 608, 614–15 (2002).

At no point during Ms. Moore's Hawaii bankruptcy, Mr. Moore's Washington bankruptcy, or the discovery period connected to this adversary have the Moores produced any written agreement with the Reises showing an agreement to convey an interest in the Battle Ground Property, much less one that complies with the formalities necessary in Washington.  Ms. Moore said in a February 3, 2021 deposition that she did not possess any deed related to the Battle Ground Property.  ECF No. 188-13 at 3:15–17.  The Moores admit that the basis for their assertion of an ownership interest in the Battle Ground Property arises from an alleged oral agreement between Ms. Moore and Ms. Armenio-Reis.  They argue that they obtained a fifty-percent interest in the Battle Ground Property in exchange for their assistance to the Reises in obtaining a loan modification and generating income with the Battle Ground Property.  The Reises' refusal of Ms. Moore's multiple requests to sign a document assigning an interest in the Property to Ms. Moore supports the Reises' position.

Under Washington law, an oral agreement could not have conveyed an ownership interest to the Moores or otherwise encumbered the Battle Ground Property. *Firth*, 146 Wash. 2d at 614–15. The Court concludes as a matter of law that any oral agreement between the Moores and Reises would fail to convey any ownership interest in the Battle Ground Property to the Moores, as it would fail to comply with Washington's statute of frauds. The Moores could not have had a legal or equitable interest in the Property on that basis, providing an additional ground for dismissal of the Moores' stay violation claim.

> b. *A factual issue remains as to the Moores' alleged possessory interest in the Battle Ground Property during the Hawaii bankruptcy.*

The last vestige of an argument by the Moores in support of their damage claim against the Moving Defendants is that they had a possessory interest in the Battle Ground Property during Ms. Moore's Hawaii bankruptcy. ECF No. 1 at ¶ 63. They argue that the Moving Defendants violated the Hawaii bankruptcy stay by trying to market and sell the Property, seeking to access the Property by posting the Two Day Notice to Enter, seeking to terminate the Moores' possession of the Property by posting the Notice to Terminate Tenancy, and coming on to the Property in September 2018.

"It is well settled that a debtor's mere possessory interest in premises, even absent any legal interest, is protected by the automatic stay." *In re Salov*, 510 B.R. 720, 729 (Bankr. S.D.N.Y. 2014) (cleaned up). But mere presence on real property is insufficient to trigger the protections of the stay—the debtor must have "some *right* to possess the property, for example, by virtue of the title holder's consent or permission." *In re Castle Serv., LLC*, 560 B.R. 587, 591 (Bankr. D. Utah 2016) (citations omitted). The Court looks to Washington law to determine whether the Moores had a possessory interest in the Battle Ground Property during Ms. Moore's Hawaii bankruptcy, viewing the evidence in the light most favorable to them.

The Moores never paid rent to the Reises to reside at the Battle Ground Property, and Ms. Moore stated in her deposition and elsewhere that the Moores had no tenancy agreement

**Below is a Memorandum Decision of the Court.**

or lease with the Reises.  ECF No. 188-13 at 3:6–14; ECF No. 199-14 ("Please be advised that there is no Landlord Tenancy Agreement nor any right to enter the [Battle Ground Property], and any effort to enter the property tomorrow or anytime thereafter is a trespass.").  According to the Moores, the basis of their right to occupy the Battle Ground Property at that point was their alleged ownership interest, which the Court has already rejected.

There is an email from Ms. Armenio-Reis authorizing Michael Moore to live at the Property.  ECF No. 199-6 at 8.  There is no similar authorization for the Moores.  Ms. Armenio-Reis also emailed a broker, saying that there were renters at the Property, with Michael Moore as the main renter, but she was unclear on the final arrangement.  ECF No. 62 at 15.  The only other evidence of the Moores' right to occupy the Property is the Reises' knowledge that the Moores—who claimed residency and ownership interests in other properties during the period from 2014 up to the start of this adversary—occasionally visited the Battle Ground Property.  And on November 5, 2019, four months after the Property was foreclosed in a nonjudicial foreclosure, Mr. Moore filed a bankruptcy petition in this Court in which he listed the Battle Ground Property as his residence.  Case No. 19-43563, ECF No. 1 at 2.  Previously, in her Hawaii bankruptcy, Ms. Moore listed her residence as a home on Komo Mai Drive in Pearl City, Hawaii.  Haw. Bankr. Case No. 17-01311, ECF No. 3 at 2.  And prior to that, in her California bankruptcy, she listed her residence as a home on Laurel Canyon Boulevard in Studio City, California.  N.D. Cal. Bankr. Case No. 16-53510, ECF No. 1 at 2.  In both her Hawaii and California cases, Ms. Moore claimed a homestead exemption in the Laurel Canyon property in California.  Haw. Bankr. Case No. 17-01311, ECF No. 16 at 15; N.D. Cal. Bankr. Case No. 16-53510, ECF No. 11 at 14.

The Court concludes that there is at least a fact question about whether the Moores had a possessory interest in the Battle Ground Property sufficient to invoke the automatic stay.  Ms. Armenio-Reis gave the Moores access to the Battle Ground Property, and the Moores performed

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT          - 25

Case 20-04017-BDL    Doc 207    Filed 07/08/21    Ent. 07/08/21 15:46:02    Pg. 25 of 35

some work to restore the Property in 2014.  At that time, Ms. Armenio-Reis also gave express permission for Michael Moore to reside at the Property for an undefined period.  The Moores have not shown a similar express approval for them to reside at the Battle Ground Property, but the circumstances create a factual issue.  Up until Ms. Armenio-Reis told Ms. Moore in 2018 that the Reises sought to sell the Battle Ground Property, there is no indication that the Reises attempted to restrict the Moores' access to the Property.  Additionally, when Ms. Armenio-Reis posted the two notices on the Property, they were addressed to Mr. and Ms. Moore in addition to their son, Michael.  ECF No. 199-14 at 5–6.  The inclusion of the Moores on the notices suggests that Ms. Armenio-Reis expected the Moores might claim a right of access to the Property or even reside there.  The Reises may have acquiesced to the Moores' access to the Property over the period from May 2014 to March 2018.  By the time the Reises took steps to remove the Moores from the Property, Ms. Moore was in bankruptcy in Hawaii.  Her residence was in Hawaii per the bankruptcy petition, and she claimed a homestead in the property located on Laurel Canyon Boulevard in Studio City, California.  But she also claimed an interest in the Battle Ground Property.

Unlike with the ownership interest that the Moores assert in the Battle Ground Property, their alleged possessory interest could have arisen absent a written agreement.  Viewing the evidence in the light most favorable to the Moores, and while acknowledging that their claim of a possessory interest in the Battle Ground Property is flimsy, questions of fact exist as to whether Ms. Moore had a legitimate possessory interest in the Battle Ground Property under Washington law when she filed for bankruptcy in Hawaii.  Therefore, the Court cannot determine as a matter of law that the Moores' alleged possessory interest in the Battle Ground Property was not part of Ms. Moore's Hawaii bankruptcy estate.  If the Moores had timely acted to extend the automatic stay under 11 U.S.C. § 362(c)(3)(A) in Ms. Moore's Hawaii bankruptcy, they would have at least alleged a colorable claim of a stay violation.  But they did not.

5. <u>Damages</u>

The Keller Williams Defendants finally argue that the Moores' stay violation claims fail as a matter of law because they cannot establish any recoverable damages. In total, the Moores claim damages in excess of $2 million resulting from the Hawaii stay violation, which includes claims for actual damages, emotional distress damages, and punitive damages. ECF No. 199-23 at 6–8. The Moores' breakdown of the damages shows lost earnings for both Mr. and Ms. Moore, lost equity interest in the Battle Ground Property, emotional distress damages for both Mr. and Ms. Moore, and punitive damages. *Id.*

a. *Actual Damages*

For a person injured by a willful stay violation, 11 U.S.C. § 362(k)(1) permits recovery of "actual damages, including costs and attorneys' fees . . . ." The Ninth Circuit held that 11 U.S.C. § 362(k) permits recovery of costs and attorneys' fees by a debtor for pursuing an action to cease a violation of the stay, as well as for pursuing an action for damages. *Am.'s Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1100–01 (9th Cir. 2015) (overruling *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010)). But the Ninth Circuit BAP has said, "Pro se litigants cannot recover attorney's fees as an item of actual damages in an action under § 362(k)." *Carter v. Barber (In re Carter)*, BAP No. EC-14-1581-KuDTa, 2016 Bankr. LEXIS 1838, at *15 (B.A.P. 9th Cir. Apr. 22, 2016) (citing *Elwood v. Drescher*, 456 F.3d 943, 947–48 (9th Cir. 2006)) (other citation omitted).

As actual damages, the Moores claim lost earnings and a lost equity interest in the Battle Ground Property. As to the lost earnings, the Moores argue that between February 6, 2018 and June 4, 2021, they have lost approximately thirty to forty percent of their income by diverting their time and effort to rectifying the alleged stay violation. ECF No. 199-23 at 6. This measure of actual damages mirrors those that the Moores attempted to claim against Flagstar and other defendants for posting a notice to quit on the Battle Ground Property. Mr. Moore testified in a

deposition that, other than loss of equity in the Battle Ground Property, he and Ms. Moore's only losses resulting from the notice to quit were derived from the time and labor they have expended in prosecuting this case over the past year. ECF No. 175-10 at 22:7–23:10.

The Court has already concluded that the Moores failed to establish any recoverable damages for the alleged violation of stay in Mr. Moore's Western Washington bankruptcy stemming from a notice to quit posted post-foreclosure on the Battle Ground Property by Flagstar's attorney. The Court now concludes that a reasonable fact finder could not find that the Moores suffered any actual damages as a result of the alleged violations of the stay in Ms. Moore's Hawaii bankruptcy. No basis exists to find that the Moores suffered any damages that arose from the Moving Defendants' actions to market and sell the Battle Ground Property, including the posting of notices or coming to the Property. The Moores have not attempted to support that their alleged lost income was caused by the alleged stay violations themselves. They cannot recover attorneys' fees for their own time as pro se litigants, nor can they assert lost income for the time and effort spent in pursuing claims for stay violations against various parties. And as the Court has already discussed, the Moores cannot assert an equity interest in the Battle Ground Property because they had no such interest as a matter of law. The Moores have failed to demonstrate any way in which they could be awarded actual damages from the alleged stay violation.

## b. Emotional Distress Damages

In select circumstances, emotional distress damages may be available under 11 U.S.C. § 362(k), formerly 11 U.S.C. § 362(h), for a willful stay violation. *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148–49 (9th Cir. 2004), *abrogated on other grounds by Gugliuzza v. Fed. Trade Comm'n (In re Gugliuzza)*, 852 F.3d 884 (9th Cir. 2017). "[T]o be entitled to damages for emotional distress under § [362(k)], an individual must (1) suffer

significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay." *Id.* at 1149.

The Moores claim extravagant emotional distress damages, attaching them to physical ailments. ECF No. 199-23 at 7–8. The Moores fail to provide evidence of harms resulting from the actual alleged stay violations in the Hawaii bankruptcy. Ms. Moore has only ever tied her alleged health issues and emotional distress to litigation that was initiated and aggressively pursued solely of the Moores' volition. The Moores have victimized several individuals and creditors with their unending litigation, generally with no goal other than to delay against foreclosures of properties in which they assert dubious interests. The Moores have described no factual circumstance in which they would be entitled to emotional distress damages because of the stay violations.

### c. Punitive Damages

Finally, punitive damages are available for willful violations of the automatic stay "in appropriate circumstances." 11 U.S.C. § 362(k). Punitive damages are only imposed where there is egregious, intentional conduct by the creditor, and courts consider factors including: "(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." *Roman-Perez v. Operating Partners Co. LLC (In re Roman-Perez)*, 527 B.R. 844, 859 (Bankr. D.P.R. 2015) (citing *In re Seaton*, 462 B.R. 582, 595 (Bankr. E.D. Va. 2011)).

The Moores have produced no evidence to establish that they suffered actual damages as a result of the alleged stay violation, much less that punitive damages are appropriate. And the Reises sought only to finally rid themselves of an over-encumbered property that, incidentally, they no longer had access to because of the Moores' actions. Moreover, the Battle Ground Property was not sold as a result of the Moving Defendants' actions, and the Moores continued to have access to the Property for years. The Moores obtained, at best, limited access

to the Battle Ground Property and used that access and the bankruptcy process in an attempt to gain ownership and delay creditors. The Court concludes there is no basis to impose punitive damages against the Moving Defendants.

Even viewing the evidence in the light most favorable to the Moores, they have failed to create any possibility that they could recover any form of damages for the stay violation claims against the Moving Defendants related to their alleged possessory interests. On that basis too, the stay violation claims can be dismissed.

### D. The Moores' Remaining Contractual Claims against the Reises

Three state-law causes of action pleaded by the Moores remain against the Reises: (1) breach of contract; (2) breach of implied covenants; and (3) promissory estoppel and unjust enrichment. ECF No. 1 at 13–15. The contract-based claims by Mr. Moore, the bankruptcy debtor, and his spouse against the Reises are sufficiently related to their claim that the Reises violated the automatic stay in marketing the Property for sale and posting notices notwithstanding the Moores' claimed interests to confer supplemental jurisdiction to this Court. *See supra* Section III.A.

1. Breach of Contract

"A breach of contract claim depends of proof of four elements: duty, breach, causation, and damages." *BP W. Coast Prods. LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1121 (W.D. Wash. 2013) (citing *Baldwin v. Silver*, 165 Wash. App. 463, 473 (2011)). The existence of an enforceable contract demands a mutual intention or "meeting of the minds" on the essential terms of the agreement. *McEachern v. Sherwood & Roberts, Inc.*, 36 Wash. App. 576, 579 (1984). Washington courts look to the objective acts or manifestations of the parties rather than their unexpressed subjective intent. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wash. 2d 692, 699 (1998). The burden of proving each element of a contract falls to the party asserting it. *Saluteen-Maschersky v. Countrywide Funding Corp.*, 105 Wash. App. 846, 851 (2001)

(citation omitted). And while a trier of fact is generally needed to decide whether an oral contract exists and, if so, its terms, "bare assertions of ultimate facts and conclusions of fact are alone insufficient to defeat summary judgment." *Id.* at 851–52 (citations omitted).

The Moores' breach of contract claim against the Reises relies entirely on Ms. Moore's assertion that Ms. Armenio-Reis entered into an oral contract with Ms. Moore on March 6, 2014 for the sale and purchase of a fifty-percent interest in the Battle Ground Property. ECF No. 1 at ¶ 101. The Moores go on to argue that the parties agreed to raise income through a hydroponics growing system and a webcast program, share expenses for repair and maintenance of the Battle Ground Property, obtain a loan modification, and thereafter own the Property together. *Id.* at ¶ 102. According to the bare claims of the Moores without further factual support, they fully performed on the agreement by repairing and maintaining the Battle Ground Property, qualifying the Reises for a loan modification, developing a webcast program, and operating a hydroponics system. *Id.* at ¶ 102. They allege the Reises then breached the contract on January 10, 2017 by:

> the failure to follow-through with the requirements to move their bank accounts to Washington and to live at the Property. Although they were more than qualified for a loan modification, the breach of the contract by the [Reises] was unjustified or unexcused given the representations to [Ms. Moore] before the making of the agreement and the representations of the Hardship Affidavit after the making of the agreement.

*Id.* at ¶ 105. What is missing from the Moores' breach of contract claim is evidence that the Reises agreed to move back to the Battle Ground Property to facilitate a modification, which the Reises strenuously deny.

Moreover, as discussed *supra*, any conveyance of an interest in the Battle Ground Property, or any agreement that otherwise encumbered the Property, would be subject to the statute of frauds and other formalities imposed by Washington law. RCW §§ 64.04.010, .020; *Key Design, Inc. v. Moser*, 138 Wash. 2d 875, 891 (1999). Accordingly, any alleged oral

agreement to convey an ownership interest to the Moores or otherwise encumbering the Battle Ground Property is unenforceable. *See supra* Section III.C.4.a.

The Moores' breach of contract claim fails as a matter of law.

## 2. Breach of Implied Covenants

Without a contract, the implied duty of good faith and fair dealing does not arise. *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569–70 (1991) ("[T]he duty arises only in connection with terms agreed to by the parties.").

> There is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. However, the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract. Nor does it inject substantive terms into the parties' contract. Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. Thus, the duty arises only in connection with terms agreed to by the parties.

*Id.* (internal citations omitted).

Even if the parties had an enforceable contract, there is no evidence that the Reises had agreed to move themselves and their bank accounts back to Washington in the hopes that they would obtain a loan modification. The Moores seek to impose terms against the Reises that were not part of any agreement, even the alleged oral agreement. This cause of action fails as a matter of law.

## 3. Promissory Estoppel and Unjust Enrichment

"The elements of promissory estoppel are '(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.'" *Clipse v. Com. Driver Servs., Inc.*, 189 Wash. App. 776, 796 (2015) (quoting *Havens v. C & D Plastics, Inc.*, 124 Wash. 2d 158, 171–72 (1994)). But where the statute of frauds applies to a type of agreement, Washington law prohibits parties from bypassing writing requirements simply by asserting a promissory

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT                    - 32

estoppel claim. *Algaier v. Bank of Am., N.A.*, No. 2:13-CV-0380-TOR, 2015 WL 5944177, at *10 (E.D. Wash. Oct. 13, 2015), *aff'd*, 691 F. App'x 497 (9th Cir. 2017) (citing *Greaves v. Med. Imaging Sys., Inc.*, 124 Wash. 2d 389, 397–401 (1994)).

The Court will assume *arguendo* that all Ms. Moore's statements regarding her conversation with Ms. Armenio-Reis are true—specifically, the contention that Ms. Armenio-Reis promised to convey a fifty-percent interest in the Battle Ground Property if the Moores obtained a loan modification agreement. But there is no evidence that the Moores obtained a loan modification. They argue the reason they did not obtain a loan modification was the Reises' failure to move themselves and their bank accounts back to Washington, citing an email from Brandon Cordero of Core Advisory Group. Yet they fail to allege or provide evidence that the Reises promised to move back to Washington and to move their accounts back to Washington. The Moores got a place for their son to live in and for them to live in intermittently for five years, without charge. The Reises were forced to endure the Moores' bad faith bankruptcy filings, lawsuits in three venues (the Hawaii adversary, the Clark County suit, and the instant adversary), and the loss of their Washington home to foreclosure. The Moores have been the cause of the injustice, and the only way to avoid further injustice is to dismiss this claim.

Similarly, "[u]njust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wash. 2d 477, 484 (2008). A claim of unjust enrichment requires proof of three elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Id.* at 484–85. What is lacking in this case for unjust enrichment is a benefit to the Reises at the Moores' expense. The Moores got possession of the Battle Ground Property rent-free for five years. The Reises ended up with the aforementioned bad faith bankruptcies to stall off foreclosures, three lawsuits by the Moores against them, and a foreclosure.

1  Both counts fail as a matter of law.

2  **IV. <u>Conclusion</u>**

3  To summarize, the Court holds:

4  a. The Moores have prudential standing to bring their claims against the Moving Defendants

5  for violation of the automatic stay in Ms. Moore's Hawaii bankruptcy.

6  b. The Moores are not judicially estopped from bringing this stay violation claim against the

7  Keller Williams Defendants.

8  c. The Moores are barred from bringing their claims against the Moving Defendants for

9  violation of the automatic stay in the Hawaii bankruptcy because the stay against acts

10  against Ms. Moore expired 30 days after the Hawaii bankruptcy was filed when she failed

11  to extend the stay. Their claims are solely for their own benefit, not for the benefit of the

12  Hawaii bankruptcy estate.

13  d. The Moores' claim of an ownership interest in the Battle Ground Property during the

14  Hawaii bankruptcy is barred as a matter of Washington law, irrespective of the expiration

15  of the stay, because it derives solely from an alleged oral agreement.

16  e. The Moores' claim of a mere possessory interest in the Battle Ground Property during the

17  Hawaii bankruptcy is the subject of a factual dispute, but, given the Court's other rulings,

18  the Moores fail to state a claim against the Defendants even if they had a possessory

19  interest in the Battle Ground Property.

20  f. The Moores fail to assert facts sufficient to create a factual issue that they were damaged

21  by reason of the alleged violations of the automatic stay.

22  g. The Moores fail to assert facts sufficient to make out claims for breach of contract, breach

23  of implied covenants of good faith and fair dealing, promissory estoppel, and unjust

24  enrichment against the Reises.

25

MEMORANDUM DECISION ON MOTIONS
FOR SUMMARY JUDGMENT         - 34

The Moores included a number of Doe Defendants in their Complaint but have never amended it to name additional defendants, even after the Court instructed them to do so at an October 21, 2020 hearing. *See* ECF No. 92. This ruling disposes of all remaining claims by the Moores in this adversary proceeding. The Court will enter a separate order incorporating its ruling.

///END OF MEMORANDUM DECISION///